## No. 12,336.

### James E. Besson et als. vs. The Mayor and Common Council of Donaldsonville.

Intervenors in an action of slander of title, having joined the plaintiff for the purpose of making common cause in resisting the claims of the defendant, and its attempt to sell the property in controversy *pendente lite*, but at the same time setting up title in themselves adverse to that of the plaintiff, can not be said to have adopted the allegations of the plaintiff's petition, and bound themselves by a judicial estoppel precluding them from bringing a new suit adversely thereto.

18

APPEAL from the Twentieth Judicial District Court for the Parish of Ascension. *Guion, J.*

*R. N. Sims* for Plaintiffs, Appellants.

*E. N. Pugh* for Defendants, Appellees.

Argued and submitted January 6, 1897.
Opinion handed down January 18, 1897.

The opinion of the court was delivered by

WATKINS, J. This is an action of slander of title or jactitation, the plaintiffs alleging ownership and possession of the property in controversy, and averring that the defendant, out of possession, is asserting title thereto to their prejudice and injury. Havard vs. Atkins, 24 An. 511; 2 Hennen's Digest, p. 1439.

Averring further that the defendant had advertised said property for sale, they coupled with their petition a prayer for a writ of injunction to issue, restraining same, and which accordingly issued.

To this suit the defendant filed a peremptory exception and plea in bar of plaintiffs' right of action, predicated upon prior judicial proceedings to which they were parties; and same having been sustained and the suit dismissed, the plaintiffs have appealed.

The only evidence introduced in the court below on the trial of the exception and plea of estoppel was the record of the suit entitled Leon Godchaux vs. Mayor and Common Council of Donaldsonville, bearing docket No. 840 in the District Court of the parish of Ascension—the same court from which this appeal is brought up—" and all the papers contained therein," and " the minutes of court showing the proceedings taken in open court in (same) and the different exceptions in (that) suit and the dates of their filing."

There appear in the transcript certain interrogatories on facts and articles and the answers thereto, as well as the answer of the defendant; but, manifestly, they have no pertinence to the exception, and we will therefore dismiss them from further consideration.

The plaintiffs sue in the capacity of legal co-heirs of Joseph and Celestine Besson, deceased, and allege that their paternal grand-

father, Jacques E. Besson, acquired at a sheriff's sale made on the 19th of May, 1820, "a certain parcel of land situated in the city of Donaldsonville, fronting on the Mississippi river, and on Cabahanasse street (now called Railroad avenue), marked No. 2, on the plan of said town, containing such front and depth as to the same then belonged, and all the right, title and interest or demand which the estate of William Donaldson had in and to said lot or parcel of land, on the 14th of April, 1820."

" That at the time of said sale (on the) 19th of May, 1820, said parcel of land so conveyed to petitioner's grandfather *fronted on the Mississippi river, nothing intervening between it and said river but the passage-way or street and the levee.* That by said sale said Jacques E. Besson acquired said parcel of land described in said deed *with the right to every and all accretion or accessions which might thereafter be formed in front thereof by alluvial deposits of said river;*" and that, immediately after said sale to him, said purchaser went into actual possession of said property, and remained in possession thereof uninterruptedly, up to the year 1860. That during the year 1860, petitioners' father, Joseph Besson, in certain partition proceedings amongst the heirs of Jacques E. Besson, aforesaid, deceased, of the property of his estate, " acquired all of the right, title and interest of said succession, and of his (Joseph Besson's) co-heirs in and to the parcel of land " sold at the aforesaid sheriff's sale *"with all the rights of accretion thereto appertaining;* and that they derive title by inheritance through him and his wife, their father and mother."

Petitioners allege that "subsequent to the year 1820, there began to form in front of said parcel of land, a batture or accretion from the deposits of river sand, during high water; that said formation was slow and gradual, and at the time of their (father's acquisition) of said lot or parcel of land, the batture did not extend more than one hundred feet from the levee in front of said lot to the water's edge at the low stage of the river. That from 1860 to 1870, there was considerable accretion in front of said property, said batture being further extended toward the river and raised by deposits of river sand during high water in said river." That at the time Jacques E. Besson acquired said lot or parcel of land in 1820, the levee ran along Mississippi street, on the river side thereof, directly in front of said land, and said levee

formed the river bank, there being at the time no intervening bat-ture, formed by accretion or otherwise, between said levee and the river. "That said *levee* remained in the same position in front of that portion of the town from 1820 to about two years since, when it was replaced by a new line of levee, constructed at a distance of about two hundred feet further out toward the river. *That prior to the construction of said new levee, the batture in front of said lot or parcel of land No. 2 was covered with water from two to four feet* * * *during the high stage of the river, but the same remained exposed and was high above the level of the river at its low stage during the fall and winter months of the year.*"

Petitioners then aver that on the 6th of March, 1871, their said father, Joseph Besson, conveyed to his daughter, Felice Besson, one of petitioners, a certain lot of ground situated in the city of Donald-sonville, "at the corner of Mississippi and Cabahanosse streets, designated as lot No. 2 on the official plan of said city," measuring sixty feet * * * *front on Mississippi street* by one hundred and twenty feet * * * on *Cabahanosse* street, together with all the rights, ways, etc., thereto appertaining; but that their father *did not convey nor divest himself of his right, title and interest in and to the said batture or secretion in front of said parcel or lot of land described in said act,*" but that, on the contrary, he "*retained his ownership and possession, until his death, of said batture property, which at the time of said sale in 1871, he had uninterruptedly held as owner and possessed under said partition proceedings as an heir of the succession of his father, Jacques E. Besson.*"

They "further show that no one now disputes their rights of ownership and possession of said batture or accretion in front of said lot or parcel of land No. 2, as the children and lawful heirs of their deceased father * * * except the municipal authorities of the town of Donaldsonville, who have recently, without any legal right or warrant whatsoever, slandered the title of petitioner to said bat-ture or accretion by claiming the same as the property of the town of Donaldsonville, and advertising same for sale," etc.

Petitioner further avers " that *since the building of the new levee in front of said town on the river, a strip of batture or accretion in front of said lot No. 2,* corner of Mississippi street and Railroad avenue (formerly Cabahanosse street) *measuring about sixty feet in width, by a depth of about two hundred and fifty feet toward the river,*

*is protected by said levee, and* (that same) *is no longer subject to be. overflowed during high water, and has become valuable property;"* and that (they) are entitled to be quieted in the possession and enjoyment thereof; and that it is worth more than two thousand dollars.

. Tne prayer of the petition conforms to the foregoing extracts from the averments thereof, and it particularly demands that the defendant be enjoined and restrained from " selling the *strip of land or accretion in front of said lot No. 2, corner of Mississippi street and Railroad avenue* (formerly Cabahanosse street), in Donaldsonville, belonging to your petitioners;" and it demands further that they " be quieted in their ownership and possession of all the said lands in front of said lot or parcel of land No. 2 on the plan of said town," etc.

The italicized portions of the foregoing extracts from the petition in this suit will more readily direct attention to the *gravamen* of the suit, and render comparison between it and the petition in the former suit, relied upon as supporting defendant's exception, more convenient and easy.

Reduced to a last analysis, this suit has for its object to maintain. the plaintiffs in the joint possession and ownership of an alleged batture formation between Mississippi street, in the city of Donaldsonville, and the Mississippi river, on the ground that same has been created from the accretions of river sand occasioned by annual swells of the Mississippi river through a long series of years, since the acquisition of the land adjacent in the year 1820 by their grandfather, and that neither their father nor their grandfather ever disposed of same to any one, and it had consequently passed to them by their right of inheritance as legal and forced heirs.

The defendant's peremptory exception is of the following tenor and purport, viz.:

That the plaintiffs " are estopped and debarred" from any further proceeding in this suit, for the reason that they filed a petition of intervention in the suit of Godchaux vs. Mayor, No. 840, " and. adopted the pleadings of said Godchaux and joined him in said suit, and were represented by the same attorney; " and that they " are bound by all the judicial admissions made by said Godchaux in said suit No. 840, touching the subject matter of the present controversy. That in said suit No. 840 it was distinctly and affirmatively alleged. that in 1820, at the time of the sale of lot No. 2 to Jacques E. Besson,.

that a batture existed in front of said lot No. 2, and the ownership of same was claimed by said Godchaux in that suit; and that (that) allegation was necessary and essential to sustain the rights of Godchaux," etc.

That the plaintiffs in this suit "are estopped and should not be heard or allowed to deny, alter or vary their judicial admissions, or shift their position; that having judicially admitted *the existence of a batture in 1820*," and averred that it was not sold to them, "they should not be allowed to allege or prove the contrary."

Referring to the petition of the plaintiff Godchaux in the suit referred to, we find that he makes claim to said lot No. 2, "forming the corner of Mississippi street and Railroad avenue * * * together with all the rights of accretion and accession belonging to and attached to said lot or parcel of ground, including the batture or land now lying in front of said lot or parcel of ground between it and the Mississippi river."

The petition further alleges that he acquired same by purchase at sheriff's sale made in 1880, and derives title thereto through mesne conveyances from Jacques E. Besson, who acquired same in 1820, in executory proceedings against William Donaldson.

Then follows this allegation, viz.:

"That *at the time of said sale to Jacques E. Besson in 1820*, the levee along the Mississippi river in front of Donaldsonville was situated about fifty or sixty feet from the corner of said lot No. 2, and *the batture in front was covered with water during the high stages of the river* (and) that said levee remained in (that) position until about two years ago;" and that about that time "the levee in front of (his) said property was removed or reconstructed about two hundred feet further toward the river, thereby leaving in front of (his) said lot or parcel of ground a strip of land sixty feet wide, by about two hundred feet in length, forming the accretion or accession to said lot or parcel of land No. 2, "which belongs to him and is in his possession."

The prayer for relief is very much the same as that in the instant suit.

The present plaintiffs, as intervenors in that suit, show (1) what the substance of Godchaux' claim in that suit was, making the usual allegation, viz.:

"(1) All of which will be seen more fully by reference to the peti-

tion of said Godchaux, and the record of said suit, hereto annexed as part hereof; (2) they state the nature and origin of the title of Jacques E. Besson, and his acquisition in 1820, of the property in dispute; (3) that of the manner in which their father, Joseph Besson, acquired same; (4) that in which Joseph Besson conveyed to his daughter, Felicie Besson; (5) that in which Felicie Besson conveyed to Henry Loeb, whose title Godchaux expropriated under an act of mortgage, and acquired his title thereto at sheriff's sale.

They then specifically aver that their father, Joseph Be·son, did not convey in the deed to his daughter, Felicie, "the batture or accretion belonging to it," and lying between it and the Mississippi river; and, consequently, same did not pass by mesne conveyances to the plaintiff, Godchaux. On the contrary, they distinctly aver, that, as said title to Felicie Besson did not include the batture or accretion, the title thereto remained in their father, and that they, as his legal and forced heirs, including Felicie Besson, acquired same by inheritance at his death.

Their prayer is, that they be allowed to intervene in said suit and join the plaintiff "in asking the court to adjudge and decree the *town of Donaldsonville not entitled as owner, or otherwise, to any por-tion of said batture herein described, and described in plaintiff's peti-tion herein, and to have no right, title or interest in said batture prop-erty;*" and it concludes with the demand *that they "be decreed the owners of said batture, or accretion,"* etc.

Having carefully, and in detail, recited all the pertinent portions of the petition in this suit, and that of the plaintiff and intervenors in the previous suit, and analyzed them with care, we are unable to perceive the conflict of allegation the defendant's exception implies.

It is quite true that the petition of the intervenors does aver that they join the plaintiff Godchaux; but it is equally true that they *restrict* that averment to the particular object of making common cause in resisting the demands of the *defendant* only for the purpose of preventing a sale of the property; and they, at the same time, most distinctly set out their ownership and possession of the batture and accretion, as having been derived by inheritance from their father, Joseph Besson. And their prayer is, that they be adjudged and decreed the joint owners of same, in their capacity as heirs, and maintained in the possession and enjoyment thereof.

These averments and prayers are altogether inconsistent with the

theory of intervenors having adopted those of the petition and prayer of plaintiff, Godchaux; and it is perfectly evident to our minds that such was not the intention of the intervenors; otherwise than as we have stated.

The intention of the intervenors was to join the plaintiff, God-chaux, and unite with him for the purpose of preventing defendant from making a sale of the property; but this they could do without adopting his averments as to ownership and chain of title.

It would have been inconsistent pleading on the part of the intervenors to have adopted the averments of Godchaux' petition, because each of their claims of ownership depended upon a different state of facts; that of intervenors upon the formation of batture or accretion susceptible of private ownership *since* the purchase by Jacques E. Besson in 1820, which did not pass to Godchaux, while that of Godchaux is that batture was *then in existence*, and passed to Jacques E. Besson by his title, and to him (Godchaux) by mesne conveyances.

In the former suit the defendant filed peremptory exceptions to the petitions of the plaintiff and of the intervenors, and the judge *a quo* made this ruling, viz.:

" I agree with defendant's counsel, that as plaintiff has no right to stand in judgment for the property, and this proposition must be assumed to be true—since the same counsel who represents him (Godchaux) also represents the intervenors, who now claim the property—he can not ask a judgment in his favor, so that his suit must be dismissed.

" The dismissal of plaintiff's suit carries with it the dismissal of the intervention, *leaving to intervenors the right to proceed by separate suit.*" (Our italics.) A like decree follows. Barron vs. Jacobs, 38 An. 371; Meyers vs. Birotte, 41 An. 746.

The injunction of the plaintiff was thereupon dissolved and the suit dismissed. Just here arises the question: Why did the judge *a quo*, having the two petitions before him, *reserve to the intervenors the right to renew the demands in a separate suit*, if, in fact, they were conclusively bound by the judicial declarations of Godchaux upon which he had no standing in court?

It may be, and doubtless was, because that theory was not then developed by the defendant's counsel, or he would have done so, entertaining the view he expressed by his decree in this case. But on the theory we have outlined with regard to the intervenors not

having adopted the allegations of Godchaux' petition, we deem his prior ruling perfectly consistent. But conceding, for the argument, that the question is in doubt, that doubt must be resolved in favor of the plaintiffs and against the exceptors; for estoppels are not favored in law. This question should, if possible, be judicially settled and definitively put at rest, particularly as the property in dispute is a riparian lot in a flourishing inland city on the shore of the Mississippi river, to the public authorities and citizens of which a settlement of the question may be of great importance, either presently or prospectively.

For these reasons we think the judgment appealed from should be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now ordered and decreed that the cause be remanded to the lower court to be therein proceeded with according to law—the cost of appeal to be taxed against the defendant and appellee, and other costs to await the final judgment in the cause.