THOMPSON, J.
 

 This is a suit to set aside a certain transfer and assignment made by-Leon Mereaux, treasurer of plaintiff corporation, of date March 7, 1926, of a sublease made by John R. Perez to the plaintiff association on February 4,1925. The said sublease and the assignment thereof covered trapping privileges on approximately 100,0OO acres of
 
 *369
 
 land, situated in the parishes of St. Bernard and Plaquemine.
 

 The grounds of nullity propounded against the assignment of the sublease, stated somewhat elaborately in the petition, are substantially that Meraux, treasurer, was not authorized by proper resolution to make the transfer for and on behalf of the association that the transfer was without consideration and was based on a potestative condition.
 

 It appears from the pleadings that John It. Perez held a lease for trapping privileges on the lands in question from the Philips Land Company and certain named individu- ■ als. This lease was for a term of ten years, expiring some time in the year 1933. The lease contract included the option on the part of Perez to purchase the lands covered by the lease at any time during its term.
 

 On December 6, 1924, Perez transferred all of his rights and privileges under the lease to the Plaquemine Parish Protective Association and the St. Bernard Trappers’ Association for a period of four months ending on April 6,1925.
 

 This lease was renewed or extended so as to cover the trapping season beginning in November, 1926, and ending in February, 1927.
 

 On February 26, 1926, Perez transferred the ten-year lease which he had acquired from the Philips Land Company and others to J. Walter Michel as trustee, reserving, however, from said transfer, the option of said Perez to purchase the land as stipulated in the original lease from the Philips Land Company.
 

 On March 7, 1926, Leon Meraux, treasurer of the St. Bernard Trappers’ Association transferred on behalf of said association the lease acquired from Perez, for the season of 1926-27, to J. Walter Michel, trustee.
 

 This transfer by Meraux appears to have been authorized by a resolution of the board of directors of the St. Bernard Trappers’ Association, adopted on March .7, 1926, which resolution itself purports to transfer the lease for the consideration stated therein as the resolution concludes as follows:
 

 “Be it further tesolved, that Leon A. Meraux be authorized to sign any further act of transfer if the same be deemed necessary, although this resolution is self-operative and is issued (intended) to completely assign, transfer, and set over all the rights and privileges which this association may have in said Philips’ lands under the above consideration and stipulations.”
 

 On April 12, 1926, a mass meeting, at which it is said there were present some 800 trappers and members of the trappers’ association, assembled and adopted á resolution repudiating the assignment of the lease to Michel, trustee, declaring the same to be null and void and directing a suit to be instituted if necessary to annul the said assignment.
 

 Some five days thereafter this suit was filed in the name of the St. Bernard Trappers’ Association through Mr. Oliver S. Livaudais as attorney. The affidavit to the petition was made by Mr. G. B. Molero, who was then president of the association.
 

 On April 20th, Mr. Molero tendered his resignation as president of the association, which was accepted at a meeting of the board of directors on the day following.
 

 At this meeting the board elected Victor Morales, Jr., as a member of the board and as president in place of Molero who had resigned.
 

 The board at this meeting passed a resolution repudiating the action of its former president in instituting the action to annul the assignment of the lease, as being unauthorized and in violation of the action of said board in authorizing the assignment and transfer to be made.
 

 The board also authorized the employment of Mr. G. F. Borah, as attorney for the association to have the suit dismissed and 'to
 
 *371
 
 defend and uphold the contract made by the board.
 

 Acting under this resolution, Mr. Borah appeared in behalf of the association and moved to dismiss the suit as having been instituted against the will of the board of directors and against the wishes of the corporation as previously expressed through formal action and resolution of the board of directors.
 

 The rule or motion to dismiss was set down for trial on May 13th.
 

 In answer to this motion to dismiss, Mr. G. Brooks Molero claiming still to be president, and Mr. Oliver S. Livaudais, individually and as attorney for the association, alleged as reasons why the suit should not be dismissed:
 

 (1) That the then president had the - authority under the law to institute and prosecute a suit in the name of the corporation without special authority from the board of directors, which power had not been limited in any manner by the charter of by-laws of the association or by resolution of the board of directors.
 

 (2) That the suit was instituted with the knowledge, consent, and approval of tlie legally elected and qualified directors to be composed of not more than nine nor less than five stockholders, a majority to constitute a quorum, and that any vacancy shall be filled by the remaining directors.
 

 (6) That the charter named certain persons to constitute the first board of directors to serve until the' first annual meeting of stockholders on the third Monday of September, 1025, and that no meeting of stockholders was held on said date and none has ever been held. That therefore directors and officers as named in the charter continued to hold, although their term had expired.
 

 (7) That at the pretended meeting of the board April 21st there were present four of the members named in the charter and Louis Serpas, Jr., who was never legally elected thereon, and hence there was no quorum present and any business transacted at said meeting was null and void.
 

 (8)That no notice of said purported meeting of April 21st was given to all of the legally constituted members of the board of directors of said association.
 

 The answer to the motion to dismiss contains other allegations which it is not necessary here to refer to.
 

 The motion to dismiss was taken up in due course, and after a hearing the same was denied by the court.
 

 Thereafter issue was joined on the main demand and a number of interventions were filed by stockholders of the association, some joining with the plaintiff and others w'ith the defendant.
 

 A trial was had and judgment was rendered in favor of the St. Bernard Trappers’ Association and the associated interveners and against Michel individually and as trustee and the interveners joined with him, annulling the transfer made to said Michel.
 

 From this judgment the defendant Michel and the interveners joined with him, the Plaquemine Parish Protection Association and the board of directors of the St. Bernard Trappers’ Association, have appealed.
 

 From the foregoing resume it will be seen that the case presents some uriusual features and a unique situation in judicial procedure.
 

 We have the president of the corporation, through counsel employed by him, joined by certain individual stockholders, demanding the undoing of an act passed on behalf of the corporation through its board of directors, and, on the other hand, we have the board of directors through counsel employed to represent said board, joined by individual stockholders, demanding, that the suit be dismissed, and, if not, that the transfer assailed be maintained. The case presents the further aspect of the board, of directors appealing
 
 *373
 
 from a judgment rendered in favor of the corporation which said board is supposed to represent.
 

 The primary question presented for decision arises on the motion to dismiss, which motion was filed at the instance and on behalf of the board of directors of plaintiff corporation, and this of course involves the question as to whether or not a suit instituted by the president of a corporation can be thereafter continued and prosecuted to judgment by such president and intervening stockholders of the corporation, against the will and over the protest of said board of directors, who are charged under the charter and under the law with the management of the affairs of the corporation.
 

 The learned trial judge, in his reasons for judgment on the merits, found that at a meeting of the stockholders had on September 21, 1925, directors were chosen for the succeeding year or until September 21, 1926; that the directors so chosen assumed office, elected officers, and organized; that the board so chosen took the charge publicly of the affairs of the corporation and not until this suit was filed (April 17, 1926) did any one ever dispute the fact of their election or the eligibility of any of them.
 

 He further held that, even though the said board was not legally and regularly elected, .and even though a majority were ineligible, yet they were de facto officers, acting under color of title and in the open and exclusive possession of the office, and discharging its functions without question or protest and hence that the action of said board in making the assignment was binding on the corporation if such assignment was otherwise legal.
 

 in this conclusion we thoroughly concur.
 

 If we are correct in this conclusion, then manifestly the board which met on April 21, 1926 and repudiated the action of the president of the corporation in instituting the present suit, and employed counsel to dismiss said suit, was the legal board and had the power to represent said corporation.
 

 The minutes of that meeting show that a quorum of the board was present after certain undisputed vacancies on the board had been filled by the board.
 

 One of the powers vested in the board by the charter is to fill all vacancies occurring in the board’s membership, whether such vacancies occur from death, resignation, or otherwise,
 

 Section 16 of Act 267 of 1914 provides that the president, vice president, or manager of any corporation organized under the laws of Louisiana, doing business in this state, shall have power, in the name and in behalf of the corporation, to authorize the institution of any suit and other legal proceedings, and no exception of want of authority shall lie on the part of any defendant.
 

 The evident purpose of this statutory provision was to avoid the necessity of having a special resolution of the board whenever it was found necessary or to the interest of the corporation to bring a suit and to prevent such technical objections as to want of such authority, being made by the defendant in the suit.
 

 It is perfectly manifest that it was never the intention of the lawmaker to confer on the president of a corporation the authority to institute and prosecute a suit in opposition to the wishes and against the protest of the board of directors of the corporation, and more especially was it. not the intention to authorize such president to seek by judicial process the undoing of the acts of the corporation legally passed by the board of directors in the exercise of the powers and discretion vested in said board by its charter ■ or by the law. '
 

 The last clause of the section referred to provides that the authority and powers conferred upon the president and other of
 
 *375
 
 ficers of the corporation may be modified, limited, or denied to them by the charter or by-laws of the corporation or by resolution of the board of directors.
 

 So that, even if the president of the plaintiff corporation had the authority to sue to set aside the contract made under the authority of the board of directors, that authority was withdrawn by the board of directors at its meeting on April 21,1926.
 

 When, therefore, this fact was presented or called to the attention of the court the authority of the president to continue the suit in the name of the corporation was at an end.
 

 It is elementary that the real and only interested plaintiff in a suit has control of it and has the right to discontinue the suit at any time, even after issue is joined by answer, except where there is a reconventional demand on the part of the defendant or where the rights of such defendant will be greatly prejudiced by such dismissal. C. P. art. 491.
 

 In Thompson v. McCausland, 136 La. 774, 67 So. 826 it was said:
 

 “It has been held by this court, and the later authorities are conclusive on the subject, that a plaintiff may discontinue his suit at any time previous to judgment being rendered, ‘but that he cannot by so doing, put the defendant out of court with respect to his demand in reconvention.’
 

 “When, in such case, the motion to discontinue contains an express reservation of defendant’s right to proceed upon his reconventional demand, the matter is one in which the law leaves nothing to the discretion of the judge, * * * and, when he has denied the motion, mandamus and prohibition will lie.”
 

 But it is contended by counsel, who represent the expresident of the corporation and the interveners joining with him, that it is impossible for a plaintiff to dismiss a suit for the purpose of defrauding interveners who have intervened in the suit for the purpose of claiming substantial rights resulting from actual possession and other rights acquired from the St. Bernard Trappers’ Association prior to March 7,1926, the date of the assignment to the defendant.
 

 The petition of the interveners alleges that they are stockholders in the plaintiff corporation and as such have valuable rights on the property in question.
 

 They do not assert any rights or interest except as such stockholders. They therefore appear before the court as stockholders championing the rights of the corporation and not as individuals.
 

 In the case of Levert v. Shirley Planting Co.,
 
 135
 
 La. 929, 66 So. 301, this court said that:
 

 “Corporations can only act through their duly constituted agents. C. P. 112; R. S. 680. And stockholders are not such, and therefore cannot act for the corporation, except when it is necessary that somebody should do so, and the officers will not, though duly requested.
 

 “Hence, if the appellants had occasion to apprehend injury to the property of the corporation, their remedy was to call upon the officers of the corporation' to act for the corporation in the premises; and if these officers would do nothing, then to take action themselves, but in the name of the corporation, not in their own.”
 

 In the above-cited case, the court further said that this court has expressly held that a shareholder has not such an interest in the property of the corporation as will afford him a standing for bringing suit in his-own name for injury to the property of the corporation.
 

 And in Mioton v. Del Corral, 132 La. 730, 61 So. 771, it was held that a single shareholder, or any number of shareholders, or the whole number, have not the right to sue in their own names or in the corporate name to recover damages to corporate property.
 

 It is argued by counsel that, even if the main suit should be dismissed at the instance of the board of directors, that fact would not carry with it the dismissal of the intervention of the stockholders.
 

 
 *377
 
 Counsel rely principally on the case of Whittemore v. Watts (Sheriff)
 
 7
 
 Rob. 10, as sustaining their contention.
 

 In that case the court stated that the intervening party, having prayed for a dissolution of the injunction and for interest and damages, was entitled to them, and could not be deprived thereof by the act of the plaintiff in dismissing the suit, but the opinion shows that the dismissal of the suit by the plaintiff was had while the case was on appeal to this court by the inteiwener, from a judgment overruling an exception. The court said that the dismissal of the suit, as far as it concerned the intervening party and appellant, was a nullity, as the lower court was as to him ousted of jurisdiction by the appeal, whatever might be the effect of the dismissal between the plaintiff and sheriff.
 

 We do not regard the 'case as precedent for holding that the dismissal of a suit by the plaintiff does not carry with it the dismissal of an intervention filed in said suit.
 

 The question is no longer a debatable one.
 

 In the case of Gorman v. Gorman, 158 La. 274, 103 So. 766, we had occasion to say:
 

 “The intervention, however, cannot retard the principal suit (Code Prac. art. 391), and its merits can only be passed on at the time the main action is decided. Code Prac. art. 394; Dubroca v. Her Husband, 3 La. Ann. 331.”
 

 ' “Moreover, the dismissal of the principal suit would carry with it the dismissal of the intervention, reserving to the intervener his right to proceed by a separate action”- — citing Walmsley Carver & Co. v. Whitfield, 24 La. Ann. 258, Barron v. Jacobs, 38 La. Ann. 370, Moyers & Go. v. Birotte, 41 La. Ann. 745, 6 So. 607, Besson v. Mayor, 49 La. Ann. 273, 21 So. 262.
 

 Our conclusion is that the suit should have been dismissed when demanded by the board of directors of the corporation.
 

 After the resignation of the president who caused the suit to be instituted, which resignation was accepted by the board of directors, and after the meeting of said board dn April 21, 1926, all control over the case by the said retired president ceased and likewise the authority of the attorney employed by him.
 

 For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that the suit be dismissed as to all parties;, the appellees to pay all costs.