60 So.2d 457 (1952)
221 La. 843
BREFFEILH
v.
BREFFEILH.
No. 40228.
Supreme Court of Louisiana.
February 18, 1952.
On Rehearing July 3, 1952.
*458 Jackson, Mayer & Kennedy, Shreveport, for defendant-appellant.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for plaintiff-appellee.
HAMITER, Justice.
George A. Breffeilh and Mrs. Marjorie Sophie Holwill Breffeilh (the two referred to hereinafter usually as plaintiff and defendant, respectively) were married February 5, 1944, in Honolulu, Territory of Hawaii. Of the union one child, John Anthony Breffeilh, was born December 9, 1944.
On April 11, 1950, plaintiff instituted this suit at his domicile in Caddo Parish, Louisiana, praying only for a judgment of divorce and alleging that he and his wife had not lived together since April 20, 1947. The latter, cited through a curator ad hoc inasmuch as she then resided in California, employed counsel and made a personal appearance in the suit by the filing of an answer and a reconventional demand.
In her pleadings defendant admitted a continuous separation of more than two years; but she averred that it was because of plaintiff's fault, not her own. She prayed for judgment awarding to her an absolute divorce, custody of the minor child, alimony for herself of $300 per month, alimony for the support of the child of $200 per month, and reasonable attorney's fees. She asked also for an accounting of her one-half of the property of the community.
After the case had been tried and submitted, but before decision, defendant's counsel moved in writing to dismiss her reconventional demand for alimony for herself. The court, on objection of counsel for plaintiff, refused to permit the dismissal. Later, it rendered judgment on the main demand granting unto plaintiff an absolute divorce and dissolving the community. On the reconventional demand the court awarded the defendant custody of the minor child and alimony of $75 per month for the child's use and benefit; but it rejected her other demands.
From the judgment the defendant appealed. Plaintiff neither appealed nor filed answer to defendant's appeal.
In this court the defendant contends as follows:
1. The district court should have permitted the dismissal of her reconventional demand for alimony for herself.
2. In the alternative, in the event she cannot dismiss her reconventional demand for alimony for herself (and attorney's fees in connection therewith), she is entitled to alimony for herself in the sum of $150 per month, together with attorney's fees.
3. The plaintiff should be required to pay her $150 per month for the support, maintenance and education of the minor child.
*459 4. She should be allowed reasonable attorney's fees in connection with her demands for custody of and alimony for the minor child.
In maintaining that she had the right to dismiss as of non-suit her reconventional demand for alimony for herself, defendant relies on Code Practice Article 491, reading: "The plaintiff may, in every stage of the suit previous to judgment being rendered, discontinue the suit on paying the costs."
The latest case decided by this court in which we considered that article is Barbara, Inc., v. Billelo, 212 La. 937, 33 So.2d 689, 690. Therein, we said that the provisions applied not only to a plaintiff in a main demand but also to a defendant filing a reconventional demand (a plaintiff in reconvention). Also, in that case we made the further observation, supporting it with numerous authorities, that:
"It is the settled jurisprudence of this court that a plaintiff may discontinue his suit at any time prior to the rendition of judgment `unless thereby some acquired right of the defendant would be impaired.'"
Hence, to be determined here is the question: Would the dismissal by this defendant of the mentioned portion of her reconventional demand impair or prejudice any right acquired by this plaintiff?
The question, we think, must be answered in the affirmative. The defendant, as above shown, is a non-resident of Louisiana and was cited in this suit for a divorce only through a curator ad hoc. However, she appeared personally, submitting herself to the jurisdiction of the Caddo Parish District Court and creating issues in the suit which otherwise could not have been raised therein legally, including the one of whether or not she is entitled to alimony for herself. Through the personal appearance and the reconventional demand, therefore, the plaintiff acquired the right (obviously of much value and importance to him) of having such alimony claim determined by that court then and for all times. Clearly an impairment of that right would have resulted had defendant been permitted to non-suit her demand respecting such claim. And it follows that the motion to dismiss was correctly denied.
We consider now defendant's alternative contention that she should be awarded alimony for herself in the sum of $150 per month, together with attorney's fees. LSA-C.C. Article 160 provides that the court, in a case where the husband obtains a divorce upon the ground of two years' continuous separation (as here), may allow the divorced wife alimony if she has not been at fault and also is without sufficient means for her maintenance. The word "fault", as used in such article, contemplates "* * * substantial acts of commission or omission on the part of the wife, violative of her marital duties and responsibilities, which constitute a contributing or a proximate cause of the separation and continuous living apart, the ground for the divorce." Felger v. Doty, 217 La. 365, 46 So.2d 300, 301.
In the instant case the defendant, according to her admission, has an independent income of at least $219 net per month. But whether or not that is sufficient for her maintenance need not be decided. The evidence, as we appreciate it, preponderately shows that the continuous separation (the ground for the divorce) was proximately caused by substantial acts of the defendant violative of her marital duties and responsibilities. In denying alimony the trial judge evidently reached the same conclusion (although no written reasons for judgment were assigned), for he personally examined her at length and in great detail with respect to the matter of fault.
From the record it appears that the marriage of the parties, as well as the birth of their son, occurred in Honolulu while plaintiff was stationed there as a member of the United States Army. In November, 1945, he was discharged from military service and returned to Shreveport, his domicile. Shortly thereafter defendant and the son followed. In December, 1945, plaintiff went to Venezuela to work for *460 the Creole Petroleum Corporation, and in April, 1946, the wife and child joined him. They lived together there until sometime in April, 1947, when the defendant departed for New York, taking with her their son. On leaving she told her husband, according to his testimony, that she was making the trip for the purposes of consulting a physician and receiving dental attention. However, on May 13, 1947, an attorney of Nyack, New York, addressed a letter to plaintiff, stating therein:
"Your wife has consulted me with reference to certain difficulties that have arisen between you, and she advises me that she wishes a legal separation, possibly, ultimately a divorce. She tells me that there is no possibility of reconciliation.
"I presume this matter can be worked out by an agreement between yourself and your wife, determining your rights and providing for the support and maintenance of your wife and child."
No reply was made to this letter.
Plaintiff obtained no further information respecting the whereabouts of his wife and son until the receipt of a letter dated September 4, 1947, from an attorney of San Francisco, California, to which city she had gone in the meantime (June, 1947). The attorney said:
"Your wife has moved to San Francisco as you are no doubt aware. She has retained me to represent her in working out her legal problems. I will be happy to forward any communications from you to her."
Thereafter, from time to time, plaintiff mailed letters to his wife and son, and also sent checks for the son's maintenance and medical expenses, in care of the attorney (for several months her local address was not revealed to him). No funds were provided for the wife, plaintiff having stated in a letter to her that, "As soon as you return to my home or that of my parents, I shall resume paying your financial obligations." The wife and son were not seen by him until the date of the trial of this case on October 26, 1950.
The reason given by defendant for her having separated from plaintiff, and about which the trial court questioned her at length, is that she had developed a feeling of loathing for him. This loathing began, she said, with plaintiff's repulsive acts while in Honolulu of forcing himself upon her after the birth of their child, she then being very nervous, in ill health, afflicted with a certain female disorder, and under instructions of her physician not to have another child within two years. She futher testified that the loathing developed fully during her one year's stay in Venezuela, while she was still experiencing the mentioned unfavorable physical condition, because of plaintiff's cruel and inhuman treatment of her, including his attitude of indifference and accusations of immorality; and that, as a result, she permitted him no sexual relations whatever with her during that year.
With respect to the asserted unfavorable physical condition of defendant and the cruel and inhuman treatment of her by plaintiff, her testimony is in general corroborated by that of her mother who resided with the parties during the greater part of the period of their living together. But such assertions, except as to defendant's nervousness, appear to be refuted by plaintiff's emphatic denial thereof and by the testimony of several other persons residing in Venezuela while the litigants were there and who were well acquainted with them. Two of these, who had visited in their home, testified that plaintiff always treated his wife in a gentlemanly, normal manner and made no derogatory remarks about her in their presence; but that defendant was rather rude and "rough" towards plaintiff on occasion. A third witness was a physician of Venezuela who made physical examinations of defendant several times. These examinations disclosed that defendant had no physical abnormality, as she claims to have had, although she was very nervous.
Therefore, we agree with the trial judge that defendant was at fault regarding the separation (assuming that he so found), and that she is not entitled to alimony for herself.
*461 We need not and do not determine the question of the right of defendant to recover attorney's fees, her demands for which were rejected by the trial court. If it be assumed that she has that right, no recovery can be permitted herein for the simple reason that the evidence is insufficient to sustain an award. It was not shown what defendant had paid her attorneys, if anything, or whether she had agreed to pay them. True, two prominent attorneys of the Shreveport Bar testified concerning the claim; but neither was familiar with the various aspects of the case and, consequently, each was unable to give a definite opinion as to an appropriate award. Under these circumstances, we think, defendant's demands for attorney's fees were correctly rejected.
There appears no good reason for our disturbing the alimony award of $75 per month for the maintenance of the minor child. Plaintiff voluntarily paid this amount prior to the institution and during the pendency of the suit, and it obviously was deemed by the judge to be ample at that time, particularly in view of the age of the child (a boy) which was then five years. If it has since become insufficient, an increase can be obtained in the trial court.
On the day this cause came on for argument here, defense counsel filed a document termed "Alternative Motion to Remand for a New Trial." Attached to the motion were photostatic copies of two letters purportedly written by plaintiff which defendant alleges support her charge that her husband made false accusations of immorality against her, this being one of the causes for the separation. Defendant also alleges that such letters are material to her position and that she was unaware of them, although she made diligent effort to secure all such letters prior to the trial and judgment in this case. She prays, in the event her reconventional demand for alimony for herself cannot be dismissed, "that this case be remanded to the lower court for a new trial, so that the newly discovered evidence referred to in this motion can be introduced." The affidavit annexed to the motion was executed only by one of defense counsel, and therein he stated that the allegations of fact made are true and correct to the best of his information.
The motion will be denied. Among other reasons we entertain considerable doubt as to defendant's alleged due diligence to discover the letters before trial. One, dated August 27, 1946, was addressed to defendant's mother; the other, dated June 27, 1947, appears to have been written to a friend of the litigants in Honolulu, and by her delivered into the possession of defendant or her mother. And the record discloses that the two last named persons lived continuously together for almost three years prior to the trial.
For the reasons assigned the judgment of the district court is affirmed.
McCALEB, J., concurs in the decree.
LE BLANC, J., concurs.

On Rehearing.
HAWTHORNE, Justice.
A rehearing was granted in this case so that we might reconsider our former decree only insofar as it affirmed a ruling of the lower court refusing to permit defendant to dismiss her reconventional demand for alimony for herself. In all other respects that judgment has become final.
Article 491 of the Code of Practice provides that "The plaintiff may, in every stage of the suit previous to judgment being rendered, discontinue the suit on paying the costs." This right to discontinue, expressly granted a plaintiff, is also available to a defendant who has filed a reconventional demand. The reason for this is, as stated in Barbara, Inc., v. Billelo, 212 La. 937, 33 So.2d 689, 690, that, "* * although a reconventional demand is usually contained in the defendant's answer, it is not deemed to be a part thereof. It enjoys the status of an independent suit, and, as such, is subject to all of the rules of pleading relative to the petition, the defendant, quoad the reconventional demand, becoming the plaintiff in this separate *462 cause of action and the plaintiff in the original suit becoming the defendant." See also Suberville v. Adams, 47 La.Ann. 68, 16 So. 652.
Under the jurisprudence of this court, although a plaintiff has a right to discontinue his suit, such discontinuance cannot destroy or affect the right of a defendant to a judgment on his reconventional demand, nor can such discontinuance affect or prejudice any right that a defendant may have under a reconventional demand. Adams v. Lewis, 7 Mart. (N.S.) 400; Davis v. Young, 35 La.Ann. 739; Thompson v. McCausland, 136 La. 774, 67 So. 826; State ex rel. John T. Moore Planting Co., Ltd., v. Howell, Judge, 139 La. 336, 71 So. 529; St. Bernard Trappers' Ass'n, Inc., v. Michel, 162 La. 366, 110 So. 617; Rives v. Starcke, 195 La. 378, 196 So. 657.
In Rives v. Starcke, supra, 660, plaintiffs instituted a petitory action claiming the ownership of a tract of land which the defendants possessed as owners. The defendants, without answering the suit or denying the facts alleged in plaintiffs' petition, pleaded that they had acquired title by prescription. This plea was taken up and tried, but, before the plea was argued or submitted to the court, the plaintiffs through counsel moved to discontinue their suit upon the payment of the costs. The attorneys for the defendants objected to a discontinuance of plaintiffs' suit so far as it might prevent the rendering of a judgment on their plea of prescription, and this objection was maintained by the trial judge. Thereafter the plea of prescription was sustained, and there was judgment declaring the defendants to be the owners of the land and rejecting the demands of the plaintiffs at their costs. This court, after stating that the right of a plaintiff to discontinue his suit at any time before judgment is rendered on his demand is an absolute right, said:
"The judge, in this case, no doubt, would have allowed the plaintiffs to discontinue their suit on paying the costs, with reservation of the right of the defendants to have a final judgment rendered on their plea of prescription,if the plaintiffs would have been satisfied with such a ruling on the defendants' objection. That would have allowed the plaintiffs to renew their suit if the judge should have decided afterwards that the plea of prescription was not sustained by the evidence which had been adduced. What the plaintiffs were demanding, in their motion to discontinue, was the right to discontinue not only their suit for recognition of the title which they claimed but also the demand of the defendants for recognition of the title which they claimed by prescription; so that, in the event of a new suit, the plaintiffs in this case would have another chance to defeat the defendants' plea of prescription."
The judgment of the lower court was affirmed, but this court pointed out:
"An affirmance of the judgment for the defendants on their plea of prescription will have the effect of rejecting finally the plaintiffs' demand, and would have the same effect if the judge of the district court had ordered the plaintiffs' suit discontinued, with reservation of the right of the defendants to have a final judgment rendered on their plea of prescription."
That case, then, is not authority, as contended by appellee in oral argument, for refusing a plaintiff the right to discontinue. The court indicated by its language that the refusal of the trial court to allow the plaintiffs to discontinue in that case was not error because plaintiffs' discontinuance became immaterial when the defendants' plea of prescription was sustained, as that judgment settled the matter of title completely between the parties.
In the instant suit, defendant in her motion to dismiss her reconventional demand for alimony for herself did not demand the right to have the suit of plaintiff for an absolute divorce discontinued. By her motion she did not seek to affect plaintiff's demand, nor could the granting of her motion interfere with, or prejudice, the *463 rights of the plaintiff to secure the thing he prayed for in his petition, that is, a divorce, or impair any "acquired right" of the plaintiff.
Counsel for appellee argue that, if appellant's motion to discontinue her reconventional demand for alimony is sustained, he will be prejudiced because his wife could renew her demand for alimony in some other forum or state, and that he would be subject to harassment by such a suit, and that for this reason he is entitled to have the question of her right to alimony settled in the instant suit. The answer to this, of course, is that whether she will sue him in some other forum is, at the most, conjectural, but, if she does, he can defend against that demand also. Counsel have cited no law indicating that the plaintiff will lose his right to defend against a subsequent claim if this demand is discontinued. Plaintiff no doubt is sincere in his contention that it would be to his advantage to have the alimony matter settled now, and that further litigation on that matter will subject him to "harassment". This complaint is one that should properly be addressed to the Legislature, because such a result to a defendant is a natural consequence of the right given to a plaintiff under Article 491.
The cases cited by appellee do not support his contention that defendant, plaintiff in reconvention, cannot dismiss her reconventional demand under the facts of the instant case. What we have said here is in no way in conflict with, or contrary to, these authorities, and they are not apposite or controlling here.
For the reasons assigned, the ruling of the lower court refusing to permit defendant to dismiss her reconventional demand for alimony in her behalf is set aside, the motion is now ordered maintained, and the judgment only insofar as it passed on this question and rejected her demand for such alimony is reversed.
HAMITER, J., dissents and assigns written reasons.
HAMITER, Justice (dissenting).
The majority opinion on this rehearing concludes that the defendant, by her motion to dismiss her reconventional demand for alimony for herself, "* * * did not seek to affect plaintiff's demand, nor could the granting of her motion interfere with, or prejudice, the rights of the plaintiff to secure the thing he prayed for in his petition, that is, a divorce, or impair any `acquired right' of the plaintiff." But the conclusion completely overlooks certain unusual features of the case. Thus, the issue of alimony could not have been tendered legally by plaintiff in his petition for the divorce, even if he had desired so to do, one of the several reasons being that the defendant is a nonresident of this state and it was necessary to cite her through a curator ad hoc. Further, the alimony demand here, unlike most reconventional demands, is wholly dependent upon the success of, is inseparably connected with, and is ancillary to plaintiff's divorce action.
By this nonresident defendant's appearing personally in the suit, subjecting herself to the jurisdiction of the district court for all purposes, and filing her reconventional demand for which no replication was needed or permitted, she granted unto plaintiff the right, not theretofore or otherwise available to him, of obtaining immediately in the courts of this state a personal judgment fully and finally adjudicating her alimony claim that is inseparably connected with and ancillary to his divorce action. Plaintiff thereby acquired an important and valuable right; and by permitting defendant to dismiss her reconventional demand his acquired right will be greatly prejudiced and impaired.
For the above reasons, as well as those assigned by me on the original hearing, I respectfully dissent.