McBRIDE, Judge.
Plaintiff, who has been extrajudicially separated from her husband since 1936 (see LSA-C.C. art. 2334), as the initial holder thereof, seeks a judgment in per-sonam in this suit on a promissory note for $5,000, dated October 27, 1958, payable on demand to the order of “ourselves” and signed and endorsed “Holy Temple of the Church of God in Christ, by: Rev. John Keys, Pastor and Elder” stipulating for interest and attorney’s fees. The defense is a “total absence of consideration” and, alternatively, that the note was not properly approved or ratified by the Board of Trustees in accordance with defendant’s charter.
After trial on the merits below, there was judgment dismissing the suit and plaintiff appeals.
The defendant is a nonprofit corporation organized November 8, 1946. Prior to incorporation the church was a loose-knit organization founded in 1938 under the complete control and domination of John Keys, who assumed the title of “Pastor and Elder.” After incorporation Keys continued on in said role and maintained the full control of the corporation to the same extent as before.
The charter provides that the corporate business shall be managed and all of its corporate powers shall be vested in and exercised by a board of five trustees to be elected by the membership of the church, the pastor of the congregation to automatically serve as a member and chairman of the board, and the other four trustees to serve for a term of one year, they to be selected from among the members of the congregation. There was never any meeting held at which or by which the congregation of the church elected or selected a Board of Trustees. Subsequent to the incorporation at an informal meeting “the Pastor (Keys) gets up and says who he is going to put on the Board” and the five persons there present, namely, Keys, Beatrice Jefferson, James Morris and Martha Johnson and plaintiff were designated as board members. They have since served as such and amongst themselves recognized each other as being members of the board, and they were accepted and recognized without question as such by all members (the number not being shown) of the corporation and have handled the corporate affairs. Under these circumstances said five persons are to be considered a de facto Board of Trustees of the corporation and their legal acts are binding on the corporation. See St. Bernard Trappers’ Ass’n, *126 Inc. v. Michel, 162 La. 366, 110 So. 617, wherein the Supreme Court held that the conclusion of the trial court was correct in holding that:
“ * * * even though the said board was not legally and regularly elected, and even though a majority were ineligible, yet they were de facto officers, acting under color of title arid in the open and exclusive possession of the office, and discharging its functions without question or protest and hence that the action of said board in making the assignment was binding on the corporation if such assignment was otherwise legal.”
The record convinces us that the note held by plaintiff and executed by the pastor, representing defendant, was given plaintiff for twenty years’ services rendered by her to the church in various activities and capacities. Both prior and subsequent to the incorporation the church was the beneficiary of her services, and we think she has shown that the pastor agreed to compensate her when the church became financially able. Among the services rendered for these twenty years by plaintiff were money-raising activities such as suppers, the actual purchasing and preparing ■of food, the solicitation of participants by sales of tickets and overseeing the suppers. She further acted as church secretary and handled the various group functions, such as the “Willing Workers” and the “Bible Band” and the'Home and Foreign Missions. She accounted to the pastor for all funds derived from the various functions, kept books of attendance and cash receipts. Plaintiff received the note sued upon in 1958 after she had consulted an attorney to force the corporation into making a settlement for her services. The pastor states he executed the note sued upon because she was “bothering” him. It appears that plaintiff’s attorney sent for the pastor who appeared at his office and admitted that the church was indebted unto plaintiff for $5,000, which amount apparently was fixed by the pastor himself. The attorney prepared a note and a mortgage on the church property securing it, both of which documents were signed by the pastor representing the church. The attorney also executed in duplicate a resolution to be signed by the Board of Trustees ratifying the actions of the pastor and this is not denied by the pastor who took the resolution and had the four other de facto trustees sign. The statements of the. pastor and the two trustees who appeared as witnesses that the paper they signed was blank is pure fabrication. We are convinced that all of the persons who signed the resolution knew well what they were doing and were cognizant of the import of the document. The execution of the note and the signing of the ratifying resolution were the voluntary acts of the signatories.
Some argument is made by counsel for defendant that the resolution ratifying the pastor’s action is without force and effect because the same was not adopted at a regular meeting of the Board of Trustees. We do not think that because there was no formal meeting that the document lacks efficacy. . All of the trustees signed the same. As the late Court of Appeal for the Parish of Orleans stated in New Founded Industrial Missionary Baptist Ass’n v. Anderson, La.App., 49 So.2d 342:
“The general rule is that directors possess authority to act as a board only at regularly assembled meetings, but the law admits of exceptions. The seven members of the executive board certainly assented to the removal of Anderson from the office of president, as shown by the minutes, and their conclusion was unanimous. Under the circumstances, we entertain not the slightest doubt that the action of the board, even if there was no meeting, is just as valid as though the vote to remove Anderson had been taken at a regularly called and legal meeting of the board.”
*127 The note is a legal obligation of the church corporation if it can be said there was legal consideration for the same and we now inquire into that question. The defendant relies heavily on the defense that there was a “total absence of consideration.”
None of the persons who testified for- the defense, particularly the pastor and two of the trustees, said, or attempted to convey, the thought that plaintiff did not render the services. All they did say is that no other church officer received remuneration for his services and for that reason the plaintiff was not entitled to be compensated. Nor did the defense witnesses challenge plaintiff’s claim that the amount of the note represented the aggregate value of the services rendered and performed.
Neither the pastor nor the trustees had any legal right or authority to give a corporate obligation to plaintiff for services she rendered prior to the incorporation of the church. The work plaintiff did for the unincorporated group was not rendered immediately preceding the incorporation nor contemporaneously with it or incidental to its organization, and there is not a word of testimony to show that during the eight years preceding the organization of the corporation the group who organized the church ever intended or contemplated its incorporation. A nonprofit organization shall not incur any debt or begin the transaction of any business, except business incidental to its organization or to the obtaining of subscriptions to, or payment for its shares, until the articles thereof have been filed for record in the office of the recorder of mortgages. LSA-R.S. 12:105, 106. No one representing the church corporation could legally give a corporate obligation for services that plaintiff had rendered to the unincorporated body. There was a want of consideration in the amount of the value of plaintiff’s services rendered anterior to the church becoming a corporation. As against a person not a holder in due course, a partial want or failure of consideration works a pro tanto avoidance or discharge of an undertaking on a bill or note. 10 C.J.S. Bills and Notes § 153, p. 627; Duvio v. Thomas, La.App., 95 So.2d 687.
But, the services rendered by plaintiff after incorporation did constitute goo'd and valid consideration to the value thereof. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration and value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value whether the instrument is payable on demand or at a future time. LSA-R.S. 7:24, 25; Barthe v. Succession of Lacroix, 29 La.Ann. 326; Quaintance v. Cook, La.App., 92 So.2d 504; Lucas E. Moore & Co. v. Hursey Transp. Co., Inc., 18 La.App. 56, 137 So. 630.
In fixing the value of plaintiff’s services at $5,000, the pastor and the Board of Trustees were allowing plaintiff $250 for each year during which she rendered her services. Approximately three-fifths of the services were rendered after the church became a corporation, and we believe it fair to hold that there was good and valuable consideration for the note to the extent of $3,000, and that plaintiff should be entitled to recover judgment for that amount from the defendant. Of course, we could remand the case in order to have testimony adduced showing exactly what proportion of the services were rendered after incorporation, but we think the record is sufficient to convince us that three-fifths thereof were rendered to the corporate body.
Counsel for appellee in brief states that the court below erred in not allowing the defendant to file a reconventional demand in the case. The record shows that the attempt to file said demand was made after issue joined and the trial judge refused to permit its filing. Counsel suggests that we should override the ruling of the trial court and now permit the filing of the incidental demand. However, defendant *128 did not appeal from said ruling, nor did it answer plaintiff’s appeal; so, therefore, we are constrained to say that the question whether the reconventional demand should have been accepted by the court is not before us.
For the reasons above assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiff have judgment against defendant for the full sum of $3,000, with interest at the rate of 8 percent per annum from October 27,, 1958, until paid and with 10 percent attorney’s fees thereon, together with costs of both courts.
Reversed and rendered.