SARTAIN, Judge.
These consolidated suits involve various actions concerning a closely held domestic corporation.
Bayou Rentals, Inc. is a corporation controlled by the heirs of Ted F. Dunham, Sr. which has been the subject of several legal controversies since his death on April 7, 1974. At that time, he owned one hundred twenty-six shares of its stock and his two sons, Ted F. Dunham, Jr. and Richard E. Dunham, owned sixty-two shares each; those three persons also comprised the Board of Directors.
On May 7, 1974, Katharine 0. Dunham, his widow and testamentary executrix, called a meeting of the shareholders at which time a new board of directors was elected by acclamation, consisting of Bill J. Alexander, E. L. Peebles, Mrs. Dunham and the two sons. It should be noted, parenthetically, that Article VIII of the corporate charter provides that the board of directors shall be composed of three persons.
Thereafter, dissension apparently arose between these parties and on November 2, 1974, Ted F. Dunham, Jr. and Richard E. Dunham held a special meeting of the board of directors, without notice to the other principals, and took certain action including the election of David L. Smith to the Board, the acceptance of Smith’s bill for $15,000.00 for services rendered to the corporation, and the issuance of certain stock to the three of them. This action was justified on the belief of all three that the election of five directors at the May 7th meeting was an absolute nullity and that the Dunham sons, therefore, were the only Board members legally remaining.
Upon notification of this action, Mrs. Dunham initially made certain efforts to nullify it; thereafter, by general agreement of the parties, no further efforts were made to solidify their positions and litigation was begun. That action consisted of the filing of a suit by Smith primarily for the recognition of his stock ownership in the corporation and for the payment of his bill for services. Thereafter, a proceeding for a writ of quo warranto was initiated by Richard E. Dunham in which the opposing faction reconvened for similar relief.
Three hearings were conducted in the trial court concerning the various issues in *1231 volved therein. In summation, the court dismissed the writ of quo warranto sought by Richard E. Dunham, but maintained that writ on the reconventional demand filed by Mrs. Dunham, Alexander and Peebles; it also dismissed Smith’s suit. Only Smith has appealed. We affirm.
The reasons for the action taken by the district court are primarily expressed in an extensive and well reasoned opinion rendered on August 15, 1975. The necessity for a full discussion of that opinion has been obviated because only Smith has appealed. Essentially the court concluded that, although contrary to the corporate charter, the five directors elected at the May 7, 1974 meeting were “de facto” directors and were thus entitled to notice of the November 2 meeting at which time the Dunham sons attempted to proceed on their unilateral course of action. Further, their failure to provide that notice rendered their action null, including the attempted issuance of stock to themselves and to Smith, and that Mrs. Dunham continued as testamentary executrix to retain the voting majority possessed by her late husband. Also applicable to Smith’s appeal are later oral reasons for judgment in which it was concluded that the Dunham sons did not have actual or apparent authority to contract with Smith for services to the corporation.
The jurisprudence of this state has recognized “de facto” corporate officers. St. Bernard Trappers Assn., Inc. v. Michel, 162 La. 366, 110 So. 617 (1926); Straughter v. Holy Temple of Church of God and Christ, 150 So.2d 124 (La.App. 4th Cir. 1963),[1] In the Matter of Louisiana Investment & Loan Corporation, 224 F.Supp. 274 (E.D.La.1963). In Michel, supra, the court observed:
“* * * even though the said board was not legally and regularly elected, and even though a majority were ineligible, yet they were de facto officers, acting under color of title and in the open and exclusive possession of the office, and discharging its functions without question or protest and hence that the action of said board in making the assignment was binding on the corporation if such assignment was otherwise legal.”
The trial judge correctly found that, although the election of five directors was in violation of the corporate charter, that such action caused those persons to be “de facto” directors. Both Ted F. Dunham, Jr. and Richard E. Dunham, who later attempted to repudiate that action, were present at that election, took part in it, and approved the action taken at that time.
Having assumed the status of “de facto” directors, those five persons remained in that capacity until removed by proper corporate action, which occurred at the next lawfully called meeting on January 9,1975. The actions at the meetings on November 2 and 5, 1974, which were conducted by the two Dunham sons, without notice to the other three “de facto” directors, were null and void.
The issue of the liability of this corporation for Smith’s services is not without difficulty. His involvement began in July, 1974, when he first discussed employment as a management consultant for Bayou Rentals, Inc. with the Dunham brothers. He related that over several previous years, he was employed by the Dunham interests in Louisiana and elsewhere that he had dealt on many prior occasions with those two persons as corporate directors, and that he had no reason to question their status as board members with Bayou. He states that they approached him as directors of that corporation and that they were clothed with the apparent, if not actual, authority to retain him. The legal principle involved is stated in Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App. 4th Cir. 1962), in which the court said:
“* * * The law is clear that a corporation is liable for the acts of its officers, agents, and servants acting within the scope of the actual or apparent authority vested in them. LSA-C.C. Articles 436-439. Esso Standard Oil Co. v. Welsh, 235 La. 593, 105 So.2d 233.”
*1232 We find, however, that because of the peculiar facts surrounding this arrangement, that Smith knew or should have known that the authority of the Dunham brothers was not what it seemed to be.
This was clearly not the usual employment relationship. By his own admission, Smith knew very well that Mrs. Dunham controlled the majority of the stock after her husband’s death and that Alexander and Peebles were, and had been, actively engaged in the business. Yet, he had absolutely no contact with them concerning the affairs of the corporation for which he was allegedly performing considerable service. He admitted that he discussed the status of the board informally with an attorney during the transitional time period. His close relationship with the persons who hired him and his subsequent action in support of their faction in this dispute compels the conclusion that he knew that the action of his employers had been taken without the approval of the other principals and possibly contrary to their wishes. In short, the depth of his understanding and participation of these events was obviously considerable and it appears that he was not an uninformed bystander who was misled by the authority which the Dunham brothers had.
The remaining three specifications of error by the appellant are directed at procedural rulings made by the district judge in the course of the trial. It is argued that the court erred in ruling that certain stipulations which had been introduced in the quo warranto hearing were binding upon the appellant in the companion suit. However, as correctly pointed out by the appellee, those stipulations were introduced without objection in the suit being heard prior to the court’s ruling.
The appellant also maintains that the trial court’s failure to allow an offer of proof or to rehear certain evidence amounted to reversible error. In Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App. 3rd Cir. 1966), writs refused, 249 La. 713, 190 So.2d 233, cert. denied, 386 U.S. 909, 87 S.Ct. 855, 17 L.Ed.2d 783, the court observed:
“In commonlaw states, upon finding prejudicial ruling as to evidence, the case would ordinarily be remanded for new trial. This is not the rule in Louisiana. Under our state constitution, ordinarily appellate review in civil cases is ‘on both the law and the facts’. Louisiana Constitution of 1921, Article VII, Section 29. By reason of this constitutional mandate, a Louisiana appellate court will usually decide the appeal on its merits rather than remanding for new trial and new findings by the trier of fact, when the reviewing court is able to make an independent factual determination of the evidence as contained by the complete record of that sought to be introduced at the trial, including that ruled inadmissible by the trial court but nevertheless included in the record for purposes of appellate review, LSA-C.C.P. Art. 1636.”
There is sufficient evidence in the record to support the ultimate action of the trial judge and to allow a full review by this court. For these reasons, the judgment of the district court is affirmed. All costs of this appeal are to be borne by the appellant.
AFFIRMED.

. Writs refused, 244 La. 221, 151 So.2d 693.